# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

WILLIAM TYLER VICKERS,
*Prisoner Identification No. 448913*,

    Plaintiff,

v.

LEON D. DIXON,

    Defendant.

Civil Action No. TDC-16-3537

## MEMORANDUM OPINION

Self-represented Plaintiff William Tyler Vickers alleges that he was assaulted by Defendant Leon D. Dixon, a sheriff's deputy, as he was being escorted out of a courtroom at the Circuit Court for Baltimore County, Maryland. Vickers now brings this civil action against Dixon pursuant to 42 U.S.C. § 1983. Vickers requests that the state "fine and suspend" Dixon for the use of excessive force and for causing "mental anguish" to Vickers. Compl. at 3. Pending before the Court is Dixon's Motion for Summary Judgment. Vickers opposes the Motion but offers no statements under oath in support of his claim. Upon consideration of the Motion and the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Dixon's motion will be granted.

## BACKGROUND

On July 8, 2016, Vickers appeared in the Circuit Court for Baltimore County for sentencing in a criminal matter. Dixon was assigned to serve as an escort court officer, responsible for providing courtroom security and escorting prisoners to and from the courtroom. Although Vickers had remained calm throughout the proceeding, when the judge imposed a

sentence of ten years of imprisonment, and he was denied permission to hug his mother, he became irate. Vickers interrupted the judge twice and was twice denied permission to speak, but nevertheless insisted on expressing his discontent. As the hearing concluded, Vickers shouted profanity, presumably at the judge, and he was removed from the courtroom.

Dixon removed Vickers from the courtroom and into a hallway leading to an elevator. The elevator connected the hallway to a series of holding cells for detainees awaiting their court proceedings. While in the hallway, Vickers said to Dixon, "You could've let me talk to my mom," then spat in Dixon's face. At the time, Vickers was handcuffed with his hands behind his back, so Dixon lifted up on the handcuffs, raising Vickers arms up and forcing him to bend forward so that he could not spit on anyone again. Vickers shouted repeatedly, including profanities, as he was taken down the hallway to the elevator. Dixon did not say anything because he did want the spit to run into his mouth. After putting Vickers in a holding cell, Dixon went to the sergeant's office and wiped the spit off of his face with a paper towel.

Other sheriff's deputies on the scene that day confirmed that Vickers spat on Dixon and was acting aggressively as he was escorted down the hallway, requiring Dixon to handle him physically. According to Deputy Anthony Santavenere, who assisted in escorting Vickers away from the courtroom, Vickers became "agitated" after he was sentenced and cursed at the judge multiple times. Santavenere Statement, Mot. Summ. J. Ex. D. When Dixon escorted Vickers out, Vickers cursed at Dixon and spat on him, "hitting him in the forehead with bodily fluid/saliva." *Id.*

> According to Deputy Leroy Lilly:
>
> Vickers was shouting profanities and aggressively struggling as Deputy Dixon lifted him from the floor. As Deputy Dixon did so the defendant turned his head toward Deputy Dixon and pursed his mouth as if to prepare to spit on DFC Dixon. In response to the gesture, DFC Dixon ordered him, "Don't do it," and placed him

> face forward against the wall with his mouth directed away from Dixon. DFC Dixon with the assistance of at least one other unrecalled deputy then placed their arms under Vickers and began walking to elevator #2. As they proceeded, the defendant continued his resistive and recalcitrant behavior refusing to walk and moving his body violently losing a shoe due to his actions. . . . Once at the elevator the elevator was called as [Vickers] continued to struggle with DFC Dixon. The elevator doors opened and the struggling [Vickers] was brought inside. Once inside, [Vickers] continued to be loud and aggressive. Due to this behavior the handcuffed [Vickers] was placed and held against the front panel of the elevator as he continued to struggle. [Vickers] was never forcefully pushed or forced into the elevator interior by DFC Dixon or any deputy and [he] sustained no observed injuries as a result of the . . . incident.

Lilly Statement, Mot. Summ. J. Ex. D.

According to Vickers, Dixon slammed him into the hallway wall repeatedly and then, once in the elevator, slammed his head into the elevator door. Vickers alleges that he was bleeding and suffered contusions on his head, bruises on his body, and lacerations on his wrists and ankles.

After Vickers was taken to the holding cell, he was transported to the Greater Baltimore Medical Center ("GMBC") by Deputy William Roach and Deputy Douglas Fellner. According to Fellner, while waiting with Vickers at the GMBC emergency room, Vickers stated that he "shouldn't have spit on Deputy Dixon" and that he "felt bad for doing this." Fellner Mem., Mot. Summ. J. Ex. D.

According to GBMC medical records relating to Vickers's treatment, Vickers's only complaint to medical staff was that his wrists hurt. According to those records, he told a physician's assistant that "he was getting sentenced today when he became upset and was involved in [an] altercation with the guard, was pushed up against the wall and the cuffs on his wrist were painful." Med. Records at 8, Mot. Summ. J. Ex. E.[1] Some redness and swelling of the wrists was noted. The treating physician's assistant noted that Vickers wanted x-rays for the

---

[1] The page numbers for this exhibit are the numbers assigned by the Court's CM/ECF system.

purpose of documenting his injury. An x-ray of Vickers's wrist revealed normal alignment and no fracture or dislocation.

Dixon pursued criminal charges of assault against Vickers. *See State v. Vickers,* No. 03-K-15-006792 (Cir. Ct. Balt. Cty. 2016), *available at* http://casesearch.courts.state.md.us/casesearch. At the trial in that case, Dixon testified that Vickers spit in his face but that he did not assault Vickers. Santavenere testified that Vickers was enraged by his sentence, that he saw Vickers spit in Dixon's face, and that there were no further incidents with Vickers once he was taken to the elevator. The case was dismissed mid-trial because the State had failed to comply with discovery rules that applied to a written report by Fellner.

## DISCUSSION

Dixon seeks summary judgment under Federal Rule of Civil Procedure 56. In support of his Motion, Dixon argues that (1) the record does not show that he used excessive force to remove Vickers from the courtroom, prevent Vickers from spitting on him, and take him to a holding cell; and (2) Dixon is entitled to qualified immunity.

### I. Legal Standard

Although Dixon seeks summary judgment before the commencement of discovery, Vickers has not submitted an affidavit pursuant to Federal Rule of Civil Procedure 56(d) or otherwise provided any reason that the Court should not consider the Motion at this time. Rather, Vickers has attached his own exhibits to his memorandum in opposition to the Motion. The Court will therefore consider the Motion.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id* at 248-49. The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## II. Excessive Force

At the time of the incident in question, Vickers had just been sentenced and was no longer a pre-trial detainee. As a result, his claim under 42 U.S.C. § 1983 for a constitutional violation is properly construed as a claim of excessive force against a prisoner in violation of the Eighth Amendment. *See Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 250 (4th Cir. 2005). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To establish an Eighth Amendment violation, an inmate must establish both that the prison official

subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Williams*, 77 F.3d at 761.

On the subjective element, an inmate must show that the guards used force "maliciously or sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In assessing this element, a court should at least consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat;" and "(4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

As for the objective level of harm, although the Eighth Amendment does not prohibit a *de minimis* use of physical force, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. The extent to which injuries are modest is accounted for in the award of damages. *See Wilkins*, 559 U.S. at 40.

Upon consideration of the record evidence, the vast majority of relevant facts are not in dispute. As reflected in the recording of Vickers's sentencing hearing, there is no dispute that Vickers became highly agitated upon receiving his sentence and being denied the opportunity to speak further or to hug his mother. There is also no genuine dispute whether Vickers spat on Dixon. While Dixon and Santavenere have testified that Vickers spat in Dixon's face, Vickers has never denied doing so. Notably, in the Complaint, Vickers states that Dixon "alleges" that

Vickers spit in his face, but he does not dispute that allegation. Compl. at 3. He also has not disputed Fellner's account that while waiting at the emergency room, Vickers stated that he "shouldn't have spit on Deputy Dixon" and that he "felt bad for doing this." Fellner Report, Mot. Summ. J. Ex. D. Nor has he disputed that he continued to shout profanities and physically struggle as he was led down a hallway to an elevator. Under these circumstances, the Court concludes that there was a "need for the application of force" to maintain control over Vickers. *Iko*, 535 F.3d at 239. Such a need included Dixon's action of lifting up on Vickers's handcuffs in an attempt to control him and prevent him from continuing to struggle, and the action of pushing Vickers toward walls and the elevator door and directing his face away to prevent further spitting. In light of Vickers's continued agitation, some physical contact with the walls of the hallway and elevator as the deputies sought to control him would be expected. There is no allegation, nor any evidence, that Dixon's interaction with Vickers lasted any longer than was necessary to move Vickers from the courtroom, to the hallway, into the elevator, and ultimately to the holding cell.

The only potential issue is whether Vickers, in asserting that Dixon continued to "slam me against the walls" as they went down the hallway and continued to "slam my head against the elevator doors," Compl. at 3-4, has created a genuine issue of material fact whether Dixon's use of force went beyond what was necessary and constituted force applied "maliciously or sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6-7. Upon consideration of the record, the Court concludes that Vickers has not done so. Beyond the facts that Vickers's characterization was made in the Complaint and has not been set forth in an affidavit, *see Bouchat*, 346 F.3d at 522, and that it is contradicted by the accounts of three sheriff's deputies, Vickers's claim is squarely

7

refuted by the objective medical evidence. The medical records provided by Dixon show that Vickers was diagnosed only with "bilateral wrist pain," for which x-rays were negative, and include no reference to any contusions, lumps, lacerations, or bruises observed by medical personnel. *Compare* Med. Records at 11 *with* Compl. at 5. Notably, when Vickers reported his injuries to medical personnel, he did not even claim that he had any injuries to his head or body, as he now alleges. His only complaint was wrist pain, which was entirely consistent with the necessary use of force to control Vickers's during his post-sentence agitation.

The need to use force to control a prisoner and the extent of injury actually inflicted are relevant factors to be considered in determining whether the use of force constituted "unjustified infliction of harm." *Whitley*, 475 U.S. at 321. Where there was an indisputable need to use force against Vickers, and Vickers's current, unsworn claims of being slammed repeatedly, with resulting bleeding, head contusions, and body injuries, are contradicted by his own statements to medical personnel and the objective medical evidence, the Court finds no genuine issue of material fact on the issue of whether Dixon's conduct went beyond what was necessary to control a plainly volatile situation to include malicious slamming of Vickers's head and body. *See Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (stating that when one account is "blatantly contradicted by the record," a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"); *see also Saunders v. Shaw*, No. 3:15CV82, 2015 WL 6693744, at *5-6 (E.D. Va. Oct. 28, 2015) (granting summary judgment on a claim of excessive force in part because there was a clear need to use force to control the plaintiff, and the plaintiff did not report alleged bruising, cuts, and swelling to medical personnel when examined); *Woods v. United States*, No. 7:10CV00420, 2012 WL 1005010, at *2, *14-15 (W.D. Va. Mar. 22, 2012) (granting summary judgment against a plaintiff where there was a

clear need to use force to control the plaintiff, and the medical evidence contradicted the claim that the plaintiff was assaulted and slammed to the ground). The Court will therefore grant summary judgment to Dixon on the Eighth Amendment claim. Accordingly, it need not address Dixon's qualified immunity argument.

## CONCLUSION

For the foregoing reasons, Dixon's Motion for Summary Judgment is GRANTED. A separate Order shall issue.

Date: March 6, 2018

THEODORE D. CHUANG
United States District Judge